126 N.J. Super. 401 (1973)
315 A.2d 30
ELIZABETH V. COLLINS, GENERAL ADMINISTRATRIX AND ADMINISTRATRIX AD PROSEQUENDUM OF THE ESTATE OF MARTIN L. COLLINS, DECEASED, PLAINTIFF-RESPONDENT,
v.
UNIROYAL, INC., DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued May 21, 1973.
Decided June 22, 1973.
*403 Before Judges CARTON, MINTZ and SEIDMAN.
Mr. Burtis W. Horner argued the cause for defendant-appellant (Messrs. Stryker, Tams & Dill, attorneys).
*404 Mr. Michael H. Hochman argued the cause for plaintiff-respondent (Messrs. Miller, Hochman, Meyerson & Miller, attorneys).
PER CURIAM.
Plaintiff's intestate, an entertainer who, with his wife and daughter, travelled extensively throughout the country performing a knife-throwing act, was killed on March 27, 1967, in an automobile accident which occurred near Chicago while they were enroute to an engagement in Des Moines, Iowa.
About five months earlier the decedent had bought five new tires for his station wagon from a Uniroyal distributor. On the day in question, the three were proceeding along Interstate Highway 80, their station wagon being loaded with their personal belongings and the paraphernalia of their act. The right rear tire failed, causing the vehicle to go out of control and roll over. Decedent sustained fatal injuries.
Decedent's widow, as general administratrix and as administratrix ad prosequendum, instituted suit against Uniroyal to recover damages for her husband's death, asserting as causes of action strict liability in tort and breach of express warranty. At the trial the cause was submitted to the jury on both theories with instructions, in the event of a verdict in favor of the plaintiff, to state whether the basis of recovery was strict liability in tort, breach of express warranty, or both. A verdict was returned for plaintiff in the sum of $125,000 for breach of warranty.
Defendant appeals, contending that the trial court erred in denying its motion for dismissal of the action for strict liability in tort; that the express warranty issue was improperly restricted in scope and incorrectly submitted to the jury; that certain evidence was erroneously received; and that plaintiff's expert lacked the qualifications to express an opinion on causation.
On the first point, defendant argues that the issue of strict liability in tort should not have been sent to the jury because all the experts testified there was no defect *405 in the tire. There is no need to consider whether the argument has merit. Since the jury chose to return its verdict on the basis of breach of express warranty, the issue of strict liability in tort is moot and if there was error in sending that issue to the jury, it was obviously harmless. The submission of a case to a jury which reaches the same result which it is contended the court should have reached furnishes no ground for reversal. Courtois v. General Motors Corp., 37 N.J. 525, 548 (1962); Manning v. Public Service Elec. & Gas Co., 58 N.J. Super. 386, 397 (App. Div. 1959).
The jury's verdict also disposes of the contentions, if otherwise meritorious, that plaintiff's expert lacked sufficient qualifications to testify and that his testimony regarding a possible defect should have been excluded.
Defendant does not dispute the existence of the express warranty issue; in fact, its position is that this should have been the sole issue presented to the jury. It urges, however, that the court erred in permitting certain testimony of the investigating state trooper, that the court erroneously received in evidence defendant's advertisement, that the instructions to the jury were inaccurate, and that the court improperly removed from the jury's consideration the limitation of damages provision of the warranty.
The warranty, according to Mrs. Collins's testimony, was given to her husband at the time he bought the tires. Its pertinent language is as follows:
The new U.S. Royal Master tire with wrap-around tread and pin stripe (1/2 inch) whitewall design is of such quality and reliability that U.S. Rubber Tire Company makes the following Guarantee:
LIFETIME  Every such U.S. Royal Master tire of our manufacture, bearing our name and serial number, other than "seconds," is guaranteed to be free from defects in workmanship and material for the life of the original tread without limit as to time or mileage.
ROAD HAZARD  In addition, every such U.S. Royal Master tire, when used in normal passenger car service, is guaranteed during the life of the original tread against blowouts, cuts, bruises, and similar injury rendering the tire unserviceable. Tires which are punctured or abused, by being run flat, improperly aligned, balanced, or inflated, cut by chains or obstructions on vehicle, damaged by fire, *406 collision or vandalism, or by other means, and "seconds" are not subject to the road hazard provision of this Guarantee.
If our examination shows that such a U.S. Royal Master tire is eligible for adjustment under either the Lifetime or Road Hazard provision of this Guarantee, we will repair it or provide a new U.S. Royal Master tire at a fractional price computed on percentage of wear of original tread depth and then current U.S. suggested exchange price as follows: [There follow a rate chart and several additional paragraphs not relevant here.]

* * * * * * * *
This Guarantee does not cover consequential damage, and the liability of the manufacturer is limited to repairing or replacing the tire in accordance with the stipulations contained in this guarantee. No other guarantee or warranty, express or implied, is made.

* * * * * * * *
Before submitting this document to the jury along with the other exhibits, the trial judge excised the italicized paragraph. He charged the jury that any attempt to limit liability to the repair or replacement of a tire in the event of a breach of warranty was not valid under the law of this State. The trial judge, in our view, correctly removed the above paragraph from the jury's consideration.
Where the suit is between a buyer and seller, the sales chapter of the Uniform Commercial Code applies with respect to express warranties as provided for in the chapter. See N.J.S.A. 12A:2-313. We need not concern ourselves with whether there was any incongruity in the jury's rejecting the theory of strict liability in tort and finding a breach of express warranty.
In the case of breach of warranty the recovery of consequential damages is permitted, N.J.S.A. 12A:2-714(3); and such damages include injury to the person proximately resulting from the breach. N.J.S.A. 12A:2-715(2)(b). Although consequential damages may be limited or excluded unless it is unconscionable to do so, the limitation of consequential damages for injury to the person in the case of consumer goods is prima facie unconscionable. N.J.S.A. 12A:2-719(3). See Heavner v. Uniroyal, Inc., 63 N.J. 130 (decided June 5, 1973; p. 33 of slip opinion). There is no *407 evidence in the record to overcome the clear unconscionability of limiting consequential damages in this case to the repair or replacement of the tire.
Defendant also challenges as plain error the following portion of the court's charge:
I instruct you also, ladies and gentlemen, that in order for the plaintiff to prevail on this cause of action for breach of an express warranty, it is not necessary that she prove the technical cause of the tire's failure, nor is it necessary on the basis of this cause of action to prove a specific identifiable defect in the tire. Plaintiff must establish that a blowout occurred during the life of the original tread while the car was being used in the normal passenger service. If she does so, and you also find that the blowout was a proximate cause of what happened, she has established a breach of express warranty by the defendant and would be entitled to recover damages from the defendant for breach of express warranty.
It is contended that this instruction removed from the jury's consideration the question of whether the defendant had intended to cover any kind of tire failure, that "blowout" was not defined therein, and that no assistance was given the jury in determining the meaning of normal passenger car service in spite of evidence that the vehicle was heavily loaded, that this was the third set of tires in 19,000 miles, and that shock absorbers had been replaced. A further contention is that the court did not refer to the construction given the language by the experts who testified.
The simple response is that all this evidence and more was before the jury. Plaintiff's expert was extensively cross-examined on what constituted normal passenger car service, including the factors referred to by the defendant. It was his opinion that the load carried by the car, plus the weight of the passengers, and the speed and distance travelled, were not abnormal. He also said that the load was not excessive for the tire pressure. Contrary testimony was given by defendant's expert. It was the jury's task to evaluate the conflicting proofs and to determine whether the station wagon *408 was being used in normal passenger car service when the accident occurred.
Moreover, failure to define the term "blowout" did not constitute reversible error. The word, as it relates to tires, is one commonly understood by laymen, and there is nothing in the warranty to suggest otherwise.
The jury also had before it copies of Uniroyal tire advertisements used during 1966, received in evidence over the objection of defense counsel. Mrs. Collins testified without objection that about a month before the purchase her husband had shown her a Uniroyal advertisement and had indicated his intent to buy the product. The jury could have inferred from these proofs that the advertisement was like the ones in evidence and that decedent relied upon it when be bought the tires. More importantly, the advertisement helped to explain the scope and intent of the "road hazard" part of the warranty which guaranteed for the life of the original tread every Royal Master tire, when used in normal passenger car service, against blowouts, cuts, bruises, and similar injury rendering the tire unserviceable. Although the term was not defined, the advertisements reflected defendant's concept of what normal passenger car service included. They extolled the virtues of the tire, containing statements such as:
If it only saves your life once, its a bargain.
... It could pay off some day. The day you hit a pothole at 70 miles an hour.
The day you sweep around a tricky, rain-slicked curve. The day it's 90 degrees in the shade and you have to go 600 miles in a hurry. The day you pick up a nail and it's three in the morning.
You're getting a brute of a carcass that's so strong, you can practically forget about blowouts.
The trial judge fully and fairly instructed the jury on the issue of normal passenger car service. He did not merely charge the jury that segment which defendant claims was plain error. He also said:
*409 Both the plaintiff and the defendant agree that the road hazard express warranty applies only if you find that Collins' Ford Country Squire wagon was used in normal passenger car service. If you find that the vehicle was not used in normal passenger car service, then the road hazard warranty does not apply. On the other hand, if you find that the vehicle was used in normal passenger car service, then you must find that the road hazard guarantee does apply. You will note, ladies and gentlemen, that nowhere in the guarantee is there a definition of the meaning of the phrase, "normal passenger car service," nor indeed is there any reference in the guarantee to load capacity of the tires or any other facts except the language that you will find.
Each of the attorneys has addressed you at length on the subject of normal passenger service, Mr. Hochman taking the position that the vehicle was used in normal passenger car service and Mr. Horner taking the position that it was not. Some of the evidence on that subject came in on the basis of expert testimony in the form of opinion about which I shall have more say later. And there was much reference made on summation to speed, mileage of the vehicle as of the date of the accident, the weight of the load, how many sets of tires were used by the car from its original purchase, the distribution of the weight load, standards relating to weight load for a 1966 Ford Country Squire station wagon, air pressure in the tires, and so forth ...
It is your function, of course, to consider all the proofs that you have heard and to consider everything that was said on the subject ...
Taking the charge as a whole, the jury could not have been misled, as defendant seems to contend, on the issue of whether the tire blew out while it was being in normal passenger car service.
We have examined the remaining assignments of error and find none of such significance as to require corrective action.
The judgment is affirmed.