**TELESAVER, INC. et al., Plaintiffs,**

v.

**UNITED STATES TRANSMISSION SYSTEMS, INC., Defendant.**

Civ. A. No. Y–86–2300.

United States District Court,
D. Maryland.

July 6, 1988.

---

Richard J. Goldman, Franklin T. Caudill, Richard M. Kremen, and Harry M. Rifkin, Baltimore, Md., for plaintiffs.

Michael D. Berman, Baltimore, Md., Jay G. Safer, and John M. Aerni, New York City, for defendant.

## MEMORANDUM

JOSEPH H. YOUNG, District Judge.

Plaintiffs, Telesaver, Inc. ("Telesaver") and its parent company Vista Technologies, Inc. ("Vista"), sued defendant United States Transmission Systems, Inc. ("USTS") for breach of contract, misrepresentation, and fraud arising from their contract to market and sell USTS's long distance telephone service on a nonexclusive basis. USTS filed a counterclaim against Telesaver, Vista, and Vista's president Richard J. Goldman, alleging breach of contract, breach of fiduciary duty, fraud, and RICO violations. The Court dismissed USTS's RICO counterclaim by marginal order, and USTS subsequently decided only to pursue its breach of contract and breach of fiduciary duty counterclaims against Telesaver and Vista. *See* USTS's Memorandum in Opposition to Plaintiffs' Motion for Partial Summary Judgment at 18 n. 6. Currently before the Court are the parties' cross-motions for partial summary judgment.

### Contractual History

On December 17, 1984, Telesaver and USTS entered into a Sales and Marketing Agreement ("Agreement") which provided that Telesaver would market and sell USTS's long distance telephone service on a nonexclusive basis for a commission based on customer use. *See* Amended Complaint, Exhibit A (Agreement). The parties executed an Agreement Modification ("Modification") on January 15, 1985, whereby Vista was made a party to the Agreement "as if its name were originally set forth in the opening paragraph of the agreement." *See* Amended Complaint, Exhibit B (Modification). Finally, to account for changed circumstances, the parties entered into an Addendum on September 13, 1985, which modified Telesaver's compensation arrangement and addressed Telesaver's existing debt to USTS. *See* Amended Complaint, Exhibit C (Addendum). The Agreement, Modification, and Addendum are governed by New Jersey law. *See* Agreement ¶ 12.3.

### Defendant's Motion for Partial Summary Judgment

USTS argues that Telesaver and Vista are barred from recovering consequential damages by paragraph 8.1 of the Agreement, which provides: "Except as provided for in [paragraph] 7.6 above [concerning breach of warranties], neither party shall be liable to the other for any indirect, special, or consequential damages as a result of a breach hereof." Telesaver and Vista demand over eight million dollars in consequential damages from USTS. *See* Amended Complaint ¶ 33.

Recently, the Supreme Court of New Jersey adopted the reasoning of the United States Court of Appeals for the Third Circuit in *Chatlos Systems, Inc. v. National Cash Register Corp.*, 635 F.2d 1081, 1086 (3d Cir.1980) (enforcing a contractual provision barring consequential damages), and held that a consequential damages disclaimer is valid unless unconscionable. *Kearney & Trecker Corp. v. Master Engraving Co.*, 107 N.J. 584, 596–97, 527 A.2d 429, 436 (1987). The court provided: "In a commercial setting, the seller's right to exclusion of consequential damages is recognized as a beneficial risk-allocation device that reduces the seller's exposure in the event of breach." 107 N.J. at 592, 527 A.2d at 433. Moreover, "many routine business transactions would be dislocated by a rule requiring invalidation of a conse-

quential damage exclusion." 107 N.J. at 599, 527 A.2d at 437.[1]

Accordingly, this Court will only invalidate the Agreement's consequential damages disclaimer if it is unconscionable. Unconscionability is "an amorphous concept" which is designed "not to erase the doctrine of freedom of contract, but to make realistic the assumption of the law that the [contractual] agreement has resulted from real bargaining between parties who had freedom of choice and understanding and ability to negotiate in a meaningful fashion." *Kugler v. Romain*, 58 N.J. 522, 544, 279 A.2d 640, 651–52 (1971), *cited with approval in Gladden v. Cadillac Motor Car Division, General Motor Corporation*, 83 N.J. 320, 336–38, 416 A.2d 394, 403 (1980) (Pashman, J., concurring). Courts apply the unconscionability doctrine to protect "those most subject to exploitation— the uneducated, the inexperienced and the people of low incomes." *Kugler*, 58 N.J. at 544, 279 A.2d at 652. "By contrast, courts are hesitant [to employ the unconscionability doctrine] to relieve strong, knowledgeable and experienced parties from a bargain which they actively negotiated when later events prove the bargain to be less advantageous than one party would prefer." *Gladden*, 83 N.J. at 339, 416 A.2d at 404 (Pashman, J., concurring) (citations omitted).

When Telesaver and its parent company Vista negotiated the Agreement with USTS, they were providing long distance telephone service to approximately twenty-five thousand business and residential customers and manufacturing a family of telecommunications switching products. They projected their 1984 and 1985 revenues at 18.6 million dollars and 33.5 million dollars respectively. *See* Reply Memorandum in Support of USTS's Motion for Partial Summary Judgment ("Reply Memorandum"), Exhibit A at 2, 4 (Vista Technologies 1985 Business Plan). Telesaver and Vista employed Robert Chertkof as corporate counsel and retained independent counsel when their legal work became too heavy. *See* Reply Memorandum, Exhibit B at 19–22 (Chertkof Deposition).

Vista's President Goldman and Chertkof negotiated the terms of the Agreement with USTS for four months. *See* Reply Memorandum Supplement, Goldman Deposition at 58. The parties examined the entire contract, and there was "much give and take." *See* Goldman Deposition at 279–80, 285. During this period, Goldman and Chertkof also considered contract offers from several other corporations, including United States Telecom and Sprint, *see* Goldman Deposition at 69–72; Chertkof Deposition at 41; however, they chose to contract with USTS because it offered the best deal. *See* Goldman Deposition at 75, 76; Chertkof Deposition at 53.

Now that their Agreement has gone sour, Telesaver and Vista cannot claim that it is unconscionable. They had enormous resources, experienced negotiators, and the freedom to choose among options. Accordingly, the Court concludes that the Agreement's consequential damages disclaimer is valid and grants USTS's motion for partial summary judgment regarding Telesaver and Vista's claim for consequential damages. *See Kathenes v. Quick Chek Food Stores*, 596 F.Supp. 713, 715 (D.N.J.1984) ("Between merchants dealing with each other, limiting a commercial loss on its face is not an unconscionable practice."); *Royal Indemnity Co. v. Westinghouse Electric Corp.*, 385 F.Supp. 520, 524–525 (S.D.N.Y. 1974) (applying New Jersey law) (a contract

---

1. Telesaver and Vista argue that the New Jersey Supreme Court's decision in *Kearney & Trecker Corp.* is inapplicable to the present case because it involved the sale of goods under the Uniform Commercial Code. Yet, courts in New Jersey do refer to the Uniform Commercial Code "as illustrative of the law in the field of sales contracts as it may be applied to other agreements." *See, e.g., Abel Holding Co. v. American District Telegraph Co.*, 138 N.J.Super. 137, 158 n. 2, 350 A.2d 292, 303 n. 2 (1975).

Moreover, this Court is unable to find any reason why the proposition articulated in *Kearney & Trecker Corp.* would not apply to other agreements, such as contracts for services. Commercial parties to service contracts in New Jersey enjoy "great latitude in their preferred allocation of risks of loss." *First Jersey National Bank v. Dome Petroleum Ltd.*, 723 F.2d 335, 339 (3d Cir.1983) (citing a line of New Jersey construction contract cases).

executed by "two industrial giants" after extensive negotiations which limits consequential damages is not unconscionable).

■ USTS also argues that the settlement provision of the Addendum prevents Telesaver and Vista from pursuing claims, other than for fraud, against USTS relating to its act or omissions prior to September 13, 1985. Paragraph A(5) of the Addendum provides:

In specific mutual consideration for the amendment of the Sales portion of the Agreement, the parties further agree that neither shall be liable to the other for any actions taken or not taken (except for fraudulent acts which neither party has reason at this time to believe the other has engaged in) in connection with the Sales portions of the Agreement up to the date hereof [September 13, 1985].

"[B]arring fraud or other compelling circumstances, [New Jersey] courts strongly favor the policy that the settlement of litigation be attained and agreements thereby reached, be honored." *Ehrenworth v. Ehrenworth,* 187 N.J.Super. 342, 349, 454 A.2d 895, 899–900 (1982) (citing *DeCaro v. DeCaro,* 13 N.J. 36, 41–42, 97 A.2d 658, 662 (1953)). Under New Jersey law, "[w]here the terms of a contract are clear and unambiguous there is no room for interpretation or construction and [the court] must enforce those terms as written." *Levison v. Weintraub,* 215 N.J.Super. 273, 276, 521 A.2d 909, 910 (citing *Kampf v. Franklin Life Insurance Co.,* 33 N.J. 36, 42–43, 161 A.2d 717, 720 (1960)), *cert. denied,* 107 N.J. 650, 527 A.2d 470 (1987).

Telesaver and Vista claim that they may pursue their claims against USTS for its acts or omissions before September 13, 1985, based on paragraph A(4) of the Addendum. Paragraph A(4) provides: "The parties also agree that the Sales Compensation terms of the Agreement governing commissions for pre-September 1, 1985 sales that have not fully matured shall continue in effect subject to payment offsets by USTS as set forth in [paragraph] B., below." When the pertinent parts of Addendum paragraphs A(4) and B are read together, they require USTS to pay Telesaver $75,000 in settlement for all lost orders which USTS did not process as of September 13, 1985. These paragraphs also require USTS to compensate Telesaver for any of these unincluded orders it later discovers pursuant to the terms of the prior Agreement. Paragraphs A(4) and B do not dilute or contradict the settlement provision of paragraph A(5), which limits the liability of the respective parties, except for fraud, to acts or omissions occurring after September 13, 1985.

■ Telesaver and Vista also maintain that USTS fraudulently induced them to agree to the Addendum, and accordingly seek to rescind the Addendum. "When a party discovers fraud, 'he must thereupon act with diligence and without delay if he desires to rescind; and the transaction will be deemed ratified if he does any material act which assumes the transaction valid.'" *Rieder v. Scher,* 674 F.Supp. 485, 487 (D.N. J.1987) (quoting *Ajamian v. Schlanger,* 20 N.J.Super. 246, 248, 89 A.2d 702, 704 (1952)).

In this case, Telesaver and Vista expected to profit from the Addendum. *See* Goldman Deposition at 392; Chertkof Deposition at 60–62. In fact, they received over one million dollars from USTS after signing the Addendum. *See* Amended Complaint ¶ 20. Finally, they did not seek recission until they filed this civil action in July 1986, roughly ten months after signing the Addendum and four months after the Addendum was terminated. *See* Goldman Deposition at 509, 511; Amended Complaint ¶¶ 14–16. Their actions ratified the Addendum, including its settlement provision, paragraph A(5).

Accordingly, the Court grants USTS's motion for partial summary judgment concerning Telesaver and Vista's claims, other than for fraud, against USTS for its acts or omissions before September 13, 1985. The Court also enters judgment in favor of USTS regarding Telesaver and Vista's claim for recission. This action renders USTS's corresponding counterclaim for restitution moot.

*Plaintiffs' Motion for Partial Summary Judgment*

██ Telesaver and Vista argue that they are entitled to partial summary judgment as to count one of their amended complaint which alleges that USTS breached the Agreement, Modification, and Addendum by failing to process customer orders and by failing to credit Telesaver for the new customer accounts.[2] Telesaver and Vista also seek partial summary judgment regarding USTS's amended counterclaim which provides that they breached the Agreement, Modification, and Addendum, as well as their fiduciary duty, by not promoting USTS's services, by taking actions adverse to USTS, and by failing to repay cash advances made by USTS.

Essentially, both parties claim that the other did not practice good faith in performing its contractual duties.

> In every contract there is an implied covenant that 'neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract; in other words, in every contract there exists an implied covenant of good faith and fair dealing.'

*Palisades Properties, Inc. v. Brunetti,* 44 N.J. 117, 130, 207 A.2d 522, 531 (1965) (quoting 5 Williston on Contracts § 670 (3d ed. 1961)), *cited with approval in Polito v. Continental Casualty Co.,* 689 F.2d 457, 463 (3d Cir.1982). The Court concludes from its review of these respective claims that "there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); Fed.R.Civ.P. 56(c). Accordingly, the Court denies Telesaver and Vista's motion for partial summary judgment regarding count one of their amended complaint and USTS's amended counterclaim.

*Conclusion*

In summary, the Court grants USTS's motion for partial summary judgment re-
garding Telesaver and Vista's claim for consequential damages and concerning Telesaver and Vista's claims, except for fraud, against USTS for its acts or omissions before September 13, 1985. The Court also enters judgment in favor of USTS regarding Telesaver and Vista's claim for recission, which renders USTS's corresponding counterclaim for restitution moot. Finally, the Court denies Telesaver and Vista's motion for partial summary judgment as to count one of their amended complaint and USTS's amended counterclaim.

In light of the Court's action, Telesaver and Vista may pursue their claims against USTS for breach of contract, misrepresentation, and fraud, which are found in counts one, two, three, and five of their amended complaint. Similarly, USTS's counterclaims against Telesaver and Vista for breach of contract and breach of fiduciary duty, contained in counts one through three of their amended counterclaim, remain viable. The case will proceed accordingly.

## ORDER

In accordance with the attached Memorandum, it is this day of July, 1988, by the United States District Court for the District of Maryland, ORDERED:

1.  That defendant's motion for partial summary judgment BE, and the same IS, hereby GRANTED regarding plaintiffs' claim for consequential damages and concerning plaintiffs' claims, except for fraud, against defendant for its acts or omissions before September 13, 1985;

2.  That judgment BE, and the same IS, hereby ENTERED in favor of defendant regarding plaintiffs' claim for recission;

3.  That defendant's counterclaim for restitution BE, and the same IS, hereby CONSIDERED moot;

---

**2.** The Court has previously concluded that Telesaver and Vista may not seek consequential damages or pursue claims, other than for fraud, against USTS for its acts or omissions before September 13, 1985. *See supra* pp. 998–1000. Thus, count one of Telesaver and Vista's amended complaint is limited accordingly.

4. That plaintiffs' motion for partial summary judgment BE, and the same IS, hereby DENIED; and

5. That a copy of this Memorandum and Order be mailed to counsel for the respective parties.