**REYNOLDS PUBLISHERS, INC., on behalf of itself and all others similarly situated, Plaintiff,**

v.

**GRAPHICS FINANCIAL GROUP, LTD., and Graphics Leasing Corp., Defendants.**

**Civil No. 96–585.**

United States District Court, D. New Jersey.

Aug. 23, 1996.

Donna Siegel Moffa, Tomar, Simonoff, Adourian, O'Brien, Kaplan, Jacoby & Graziano, A Professional Corporation, Haddonfield, NJ, for Plaintiff.

Matthew D. Baxter, Philadelphia, PA, David W. Wolf, Cherry Hill, NJ, for Defendants.

## OPINION

ROSEN, United States Magistrate Judge:

Presently before the court is the motion of Matthew D. Baxter, Esquire, and David W. Wolf, Esquire, counsel for the defendants, to

dismiss the complaint for lack of *in personam* jurisdiction, pursuant to Fed.R.Civ.P. 12(b)(2), and for improper venue pursuant to a forum selection clause located in the lease agreements which form the basis of the complaint. This court has jurisdiction to hear this matter upon the parties' consent pursuant to 28 U.S.C. § 636(c). After careful consideration of the parties' submissions, and after further consideration of the oral argument conducted on the record on August 13, 1996, and for the reasons noted below, the defendants' motion shall be *denied*, and the case shall be transferred to the United States District Court for the District of Massachusetts.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Reynolds Publishing, Inc. d/b/a Spectracolor (hereinafter "Reynolds"), operated a commercial printing and publishing business in Cherry Hill, NJ, with approximately 20 employees and annual gross sales generally $1.5 million. (Complaint ¶ 2, P's Br. at 4 n. 2). Beginning in December 1989, the plaintiff contracted with a non-party vendor in Pennsylvania for the purchase of computer equipment, specifically the Varitype 4300 Adobe Postscript Laser Image Setter. The plaintiff required financing to complete the transaction. Consequently, the vendor contacted Defendants Graphic Financial Group, Ltd. and Graphics Leasing Corporation, affiliated equipment and tangible personal property leasing and financing companies. The defendants' principal place of business and place of incorporation is in Massachusetts. The plaintiff entered five leases for substantially the same property between December 1989 and January 1990—the only alteration was for an upgrade. (Complaint ¶¶ 11–30). According to the terms of the lease agreements, the plaintiff was to pay "use tax" if applicable. (*See* Lease Agreements attached as Exhibits A

through E). The defendants charged use tax to the plaintiff on each of the leases in its monthly statements, which the plaintiff paid. (*See* Complaint ¶¶ 13–30).

The plaintiff paid the full amount on four of the five lease agreements (apportioned over 60 monthly payments). (*Id.*).[1] At some unidentified time, the plaintiff became aware of N.J.S.A. 54:32B–8.29, which the plaintiff alleges exempts publishers of newspapers from the equipment use tax.[2] Thus, the plaintiff contends that by collecting use tax from parties who are exempt from tax, the defendants violated the provisions of the New Jersey Consumer Fraud Act, N.J.S.A. 56:8–2, *et seq.* On January 12, 1996, the plaintiff filed a putative class action, and on February 9, 1996, the defendants removed the action to this court and subsequently filed the present motion to dismiss.

Contained within the subject agreements was a forum selection clause. The clause appears in paragraph 3, on the first page of the agreements and states in full as follows:

**ACCEPTANCE. INSTALLATION SHALL BE DEEMED TO HAVE OCCURRED WHEN THE EQUIPMENT HAS BEEN DELIVERED TO AND ASSEMBLED ON LESSEE'S PREMISES, AND HAS BEEN PUT IN CONDITION READY FOR LESSEE'S USE, WHETHER OR NOT LESSEE SHALL HAVE THEN RECEIVED INSTRUCTIONS FOR ITS OPERATION.** This Agreement is not consummated nor binding on LESSOR until accepted by an authorized officer of LESSOR. All prepayments specified in the Schedule of Rent Payments and Additional Provisions (in paragraph 1): (a) if installation occurs, will be applied in accordance with the Schedule of Rent Payments and Additional Provisions; (b) if installation fails to occur by reason of LESSEE'S failure or refusal to

---

**1.** The plaintiff does not explain why it did not fully pay the amount required under the fourth lease agreement, although it paid all of the payments on contemporaneous lease agreements. (*Id.*).

**2.** N.J.S.A. 54:32B–8.29 states in relevant part:
Receipts from sales of production machinery, apparatus or equipment for use or consump-

tion directly and primarily in the publication of newspapers in the production departments of a newspaper plant ... are exempt from the tax imposed under the Sales and Use Tax Act; but sales of motor vehicles, typewriters, and other equipment and supplies otherwise taxable under this act are not exempt.

permit it, will be permanently retained by LESSOR, for liquidated damages. If installation does not occur for any other reason, the advance rentals will be returned to LESSEE within a reasonable period of time less reasonable costs incurred for LESSOR's administration. No officer or employee of LESSOR is authorized to waive, modify or add to any of the provisions hereof except in writing. NO REPRESENTATIONS MADE BY ANYONE OTHER THAN AN AUTHORIZED OFFICER OF LESSOR IN WRITING ARE BINDING ON LESSOR. This agreement shall be considered to be a MASSACHUSETTS contract and shall be interpreted, and the rights and liabilities of the parties hereto determined, in accordance with the law, and in the courts, of the Commonwealth of Massachusetts.

(Complaint, Exhibits A–E).

The defendants assert that the motion should be dismissed on two grounds: (1) that this court lacks personal jurisdiction over the defendants, and (2) that the forum selection clause divests the court of jurisdiction over the case. With respect to personal jurisdiction, the defendants contend that the lease agreements have no substantial connection to New Jersey, and thus, specific jurisdiction cannot be found. Further, the defendants contend that they do not have sufficient contacts with the forum state for the court to exercise general jurisdiction. In opposition, the plaintiff asserts that the subject property is located in New Jersey and that, according to New Jersey law, the defendants have places of business throughout New Jersey at locations where the equipment and tangible property leased to New Jersey individuals and entities are maintained. (Complaint ¶ 3, citing N.J.S.A. 54:32B–2(i)(F)). With respect to the forum selection clause, the defendants assert that it is valid and enforceable, while the plaintiff alleges that it is fraught with fraud and misrepresentation, and is contrary to public policy.

## II. DISCUSSION

### A. Personal Jurisdiction is Present

■ This court has personal jurisdiction over defendants if the exercise of that jurisdiction comports with the laws of New Jer-

sey, Fed.R.Civ.P. 4(e), and does not violate due process. *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). The Court in *International Shoe* found that the Due Process Clause of the Fourteenth Amendment permits a court to exercise jurisdiction over a party whenever that party has "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Id.* at 316, 66 S.Ct. at 158. This court's inquiry is simplified as New Jersey has adopted a long-arm statute that reaches as far as due process permits. *Carteret Savings Bank, F.A. v. Shushan,* 954 F.2d 141 (3d Cir.), *cert. denied,* 506 U.S. 817, 113 S.Ct. 61, 121 L.Ed.2d 29 (1992) (citing New Jersey Court Rule 4:4–4 which permits service "consistent with due process of law"); *see also Avdel Corporation v. Mecure,* 58 N.J. 264, 268, 277 A.2d 207, 209 (1971) (recognizing that New Jersey allows service out of state pursuant to New Jersey's long-arm statute "to the uttermost limits permitted by the United States Constitution").

■ Where, as here, a defendant raises the issue of personal jurisdiction, the plaintiff bears the burden of establishing that the defendant's contacts with the forum state comport with the requirements of due process. "To carry this burden, plaintiff must show 'with reasonable particularity' that the forum, and thus the court has either: (1) specific jurisdiction (where the cause of action arose from the defendant's activities within the forum state), or (2) general jurisdiction (derived from defendant's continuous and systematic conduct in the forum state)." *Giangola v. Walt Disney World Company,* 753 F.Supp. 148, 154 (D.N.J.1990) (citing *Provident Nat'l Bank v. California Federal Savings & Loan Ass'n,* 819 F.2d 434, 437 (3d Cir.1987)). Once a court has found that a defendant's contacts with the forum are sufficient to confer jurisdiction, "in appropriate cases" the court may evaluate other factors. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 476–77, 105 S.Ct. 2174, 2184–85, 85 L.Ed.2d 528 (1985). Included among the factors are (i) the burden on defendant, (ii) the forum state's interest in adjudicating the

dispute, (iii) the plaintiff's interest in obtaining convenient and effective relief, (iv) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (v) the shared interest of the several States in furthering fundamental substantive social policies. *See id.* at 477, 105 S.Ct. at 2184 (quoting *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 292, 100 S.Ct. 559, 564, 62 L.Ed.2d 490 (1980)). As this court has previously noted, "[t]he central concern in a question of personal jurisdiction is the predictability and fairness of the court taking jurisdiction over the defendant." *Giangola,* 753 F.Supp. at 155. To find a proper exercise of jurisdiction, "it is essential that there be some act by which the defendant purposely avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits of its laws." *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958) (quoted in *Burger King,* 471 U.S. at 475, 105 S.Ct. at 2184).

■ The defendants contest the existence of either specific or general personal jurisdiction. (Ds' Br. at 4–5). The defendants state that "there is only one connection between these leases and the state of New Jersey, and that connection has nothing to do with the defendants: the *plaintiff* chose to locate the leased equipment in New Jersey." *(Id.* at 5). In support of this assertion, the defendants refer the court to the terms of the agreement which specifically state that "[t]his Agreement shall be considered to be a MASSACHUSETTS contract and shall be deemed to have been make in Middlesex County, Massachusetts, regardless of the order in which the signature of the parties shall be affixed hereto[.]" (See Complaint, Exhibit A). In counterdistinction, the plaintiff offers N.J.S.A. 54:32B–2, which provides that a "vendor" in New Jersey includes "[a] person who purchases tangible personal property for lease, whether in this State or elsewhere." The statute further provides that "the presence of leased tangible personal property in this State is deemed to be a place of business in this State." *Id.* Under this statute, specifically applicable to leased personal property, the defendant is considered to have a place of business in New Jersey. This clear-

ly confers general jurisdiction upon this court. Moreover, the exercise of specific jurisdiction is also appropriate as the contact with the state—the Agreement—provides the basis for the case. The defendant's contact with the plaintiff spanned several years and several lease contracts. Further, the plaintiff made up to sixty monthly payments on each of the five contracts. (See Complaint, Exhibits A through E). As the Third Circuit recognized, "[d]ue process does not require a defendant's physical presence in the forum before personal jurisdiction is exercised." *Grand Entertainment Group Ltd. v. Star Media Sales, Inc.,* 988 F.2d 476, 482 (3d Cir.1993). Rather, "[c]ourts must also look into 'prior negotiations and contemplated future consequences.'" *Id.* (quoting *Quill Corp. v. North Dakota,* 504 U.S. 298, 307, 112 S.Ct. 1904, 1910, 119 L.Ed.2d 91 (1992)). The consequences of an ongoing commitment with customers located in New Jersey should have been contemplated by the defendants.

This court may properly exercise personal jurisdiction over the defendants, and the defendants' motion to dismiss on this ground shall be *denied.*

### B. Forum Selection Clause

■ That this court has personal jurisdiction over the defendants, however, does not end the inquiry. The defendants additionally have requested dismissal on the ground that the forum selection clause is valid and enforceable. The defendants argue that this enforceable clause divests this court of jurisdiction as there is no venue proper here. The defendants rely for this argument upon *Instrumentation Associates, Inc. v. Madsen Electronics (Canada), Inc.,* 859 F.2d 4 (3d Cir.1988). This case appears to assert that if the plaintiff does not request a transfer when a defendant has moved for dismissal, the court should not *sua sponte* conduct a transfer analysis. *See id.* at 6, n. 4. However, the Third Circuit recently substantially revised a trial court's inquiry with respect to jurisdiction, dismissal or transfer when a forum selection clause is involved. *See Jumara v. State Farm Insurance Company,* 55 F.3d 873, 877, n. 3 (3d Cir.1995) (rejecting the argument that the court may not address the

transfer issue unless the parties invoke the transfer statute). The court required trial courts to consider—*sua sponte*—the applicability of the federal transfer statutes, 28 U.S.C. §§ 1404(a) and 1406.[3] As this court has determined that it can invoke in personam jurisdiction, the proper analysis involves the § 1404(a) balancing test. *Id.*

In *Jumara,* the Third Circuit articulated the standard for transfer in § 1404(a) cases. Courts must consider not only the factors articulated in section 1404(a) (convenience of parties, convenience of witnesses, or interests of justice), but also "all relevant factors to determine whether on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum." 55 F.3d at 879 (quoting 15 WRIGHT, MILLER & COOPER § 3847). Those factors include private interests—"plaintiff's forum preference as manifested in the original choice ...; the defendant's preference ...; whether the claim arose elsewhere ...; the convenience of the parties as indicated by their relative physical and financial condition ...; the convenience of the witnesses-but only to the extent that the witnesses may actually be unavailable for trial in one of the fora ...; and the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum)." *Jumara,* 55 F.3d at 879 (citations omitted). The factors also include public interests— "the enforceability of the judgment ...; practical considerations that could make the trial easy, expeditious, or inexpensive ...;

3. Section 1404(a) states:

For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought. Section 1406 states in relevant part:
(a) The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought. 
Section 1404(a) governs situations in which the lawsuit was proper in both the original and the alternative venue. Section 1406 governs those situations in which venue was improper in the original jurisdiction, and provides for dismissal or transfer.

the relative administrative difficulty in the two fora resulting from court congestion ...; the local interests in deciding local controversies at home ...; the public policies of the fora ...; and the familiarity of the trial judge with the applicable state law in diversity cases." *Id.* (citations omitted).

Significantly, the court did not extend dispositive weight to the forum selection clause. Rather, the court indicated the following:

a forum selection clause is treated as a manifestation of the parties' preferences as to a convenient forum. Hence, within the framework of § 1404, Congress 'encompasse[d] consideration of the parties' private expression of their venue preferences.' ... Although the parties' agreement as to the most proper forum should not receive dispositive weight, ... it is entitled to substantial consideration.... Thus, while courts normally defer to a plaintiff's choice of forum, such deference is inappropriate where the plaintiff has already freely contractually chosen an appropriate venue.

*Jumara,* 55 F.3d at 880 (citations omitted). The court concluded that "[w]here the forum selection clause is valid, which requires that there have been no 'fraud, influence, or overweening bargaining power,' ... the plaintiffs bear the burden of demonstrating why they should not be bound by their contractual choice of forum." *Id.* (quoting *The Bremen v. Zapata Off–Shore Co.,* 407 U.S. 1, 12–13, 92 S.Ct. 1907, 1914–15, 32 L.Ed.2d 513 (1972)).[4]

4. The Third Circuit has stated that in any transfer request the plaintiff's choice of forum is a "paramount consideration," and its choice should not be lightly disturbed. *Shutte v. Armco Steel Corp.,* 431 F.2d 22, 25 (3d Cir.1970), *cert. denied,* 401 U.S. 910, 91 S.Ct. 871, 27 L.Ed.2d 808 (1971). When a plaintiff chooses his home forum, traditionally the choice has been "entitled to greater deference," *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 255, 102 S.Ct. 252, 265, 70 L.Ed.2d 419 (1981), at least when it coincides with a district in which a substantial part of the events or omissions giving rise to the claim occurred. The plaintiff's choice of forum is not, however, dispositive. *American Tel. & Tel. Co. v. MCI Communications Corp.,* 736 F.Supp. 1294, 1306 (D.N.J.1990). Moreover, "[w]hen the central facts of a lawsuit occur outside the forum state, a plaintiff's selection of that forum is enti-

After fully considering all of the above referenced factors, the *Jumara* court determined that "the other factors cannot even in combination overcome the forum selection clause[.]" *Jumara*, 55 F.3d at 875. Accordingly, the court reversed the trial court's decision to dismiss the case and ordered that the case be transferred to the federal court located in the county indicated in the forum selection clause pursuant to section 1404(a).

The defendants have argued that the transfer statutes are not relevant because the contract does not provide for litigation in federal court in Massachusetts. With respect to the chosen forum the contracts state: "This Agreement shall be ... interpreted, and the rights and liabilities of the parties hereto determined, in accordance with the law, and in the courts, of the Commonwealth of Massachusetts." (*See* Complaint, Exhibits A–E). The defendants contend that this language limits the jurisdiction to non-federal courts in Massachusetts.

However, the *Jumara* court, when faced with similar language in a Pennsylvania contract, determined that the phrase "a court of record in the county" included both federal and commonwealth courts. *Jumara*, 55 F.3d at 881. Similarly, "in the courts, of the Commonwealth" does not limit jurisdiction to only non-federal courts. Rather, that language vests jurisdiction in *any* court in the Commonwealth. Federal courts are courts in the Commonwealth of Massachusetts. Thus, the parties did not limit venue to non-federal courts.[5]

After consideration of the parties' submissions and the further argument on August 13th, this court finds that the balance of the factors do not outweigh the parties' contractual choice of forum.[6] Plaintiff's counsel conceded during oral argument that the factors involving convenience of the parties and of the courts do not sway the balance in the plaintiff's favor. Counsel argued instead that the public policy of New Jersey, the forum

---

tled to less deference." *Ricoh Co., Ltd. v. Honeywell Inc.*, 817 F.Supp. 473, 481 (D.N.J.1993). *See also National Micrographics Systems v. Canon U.S.A.*, 825 F.Supp. 671, 681 (D.N.J.1993).

Additionally, in a case based upon diversity jurisdiction, the continuing viability of this presumption in favor of a plaintiff's choice of forum for purposes of determining venue is questionable where the plaintiff has chosen its home state as the forum, as in the present case. In 1990, Congress enacted § 311 of the Judicial Improvement Act of 1990, Pub.L. 101–650 (Dec. 1, 1990), significantly amending the former venue statute, 28 U.S.C. § 1391(a) (1986), which had permitted venue "in the judicial district where all plaintiffs or all defendants reside, or in which the claim arose." The amendment no longer recognizes venue based on a plaintiff's residence. Section 1391(a) was then further amended to add the final clause "if there is no district in which the action may otherwise be brought." 28 U.S.C. § 1391(a)(3), § 504 of Pub.L. 102–572, 106 Stat. 4513 (Oct. 29, 1992). The purpose of the final clause was to make clear that venue under subsection 1391(a)(3) (i.e., venue in the district in which defendants are subject to personal jurisdiction) is available only if venue under section 1391(a)(1) (where a defendant resides, if all defendants reside in the same state) and 1391(a)(2) (where a substantial part of the events or omissions giving rise to the claim occurred or a substantial part of the subject property is located) is unavailable. Thus, the plaintiff's residence, although relevant to transfer under section 1404(a), is irrelevant to the determination of venue under section 1391(a) unless it happens to

coincide with a venue otherwise permitted by 1391(a)(1), (2) or (3).

5. The defendants rely upon *Instrumentation Associates v. Madsen Electronics*, 859 F.2d 4, 6 n. 4 (3d Cir.1988), in support of their assertion that the forum selection clause limits jurisdiction to state courts. However, *Instrumentation* concerned a *Canadian* forum selection clause. Thus, it was evident that a Canadian court is "outside the limits of any 'district or division' to which 28 U.S.C. § 1404(a) permits transfer." *Id.* (quoting section 1404(a)). Here, however, the court is transferring within the territorial boundaries of the United States. Thus, *Instrumentation* is inapposite.

Moreover, this court shall follow the reasoning in *Jumara*. *Jumara* is the Circuit's most recent statement on the topic of forum selection clauses and transfer of venue. Furthermore, Judge Garth, who sat on the panel of *Instrumentation*, entered the lone dissent in *Jumara*, which comported with the *Instrumentation* holding, but which the majority rejected.

6. The plaintiff states in his supplemental submission dated August 16, 1996, that because this action is a putative class action, the books and records factor weighs in favor of retaining jurisdiction. However, as the defendants' records are located in Massachusetts, this factor is neutral. Moreover, class actions are equally recognized in either the federal or state court in Massachusetts pursuant to Federal Rule of Civil Procedure 23 or Massachusetts Rule of Civil Procedure 23.

state, compels this court to find the forum selection clause invalid and order adjudication of the controversy in a court of competent jurisdiction within New Jersey.

### C. Validity of the Forum Selection Clause

"In federal court, the effect to be given a contractual forum selection clause in diversity cases is determined by federal not state law. Because '[q]uestions of venue and the enforcement of forum selection clauses are essentially procedural, rather than substantive, in nature,' ... federal law applies in diversity cases irrespective of *Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938)." *Jumara,* 55 F.3d at 877 (quoting *Jones v. Weibrecht,* 901 F.2d 17, 19 (2d Cir.1990)). The Supreme Court, overruling a long history of antagonism towards forum selection clauses, held in *The Bremen v. Zapata Off-Shore Co.,* 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972), that forum selection clauses are "prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances." 407 U.S. at 10, 92 S.Ct. at 1913. In the Third Circuit, in accordance with the dictates of the Supreme Court, forum selection clauses are presumptively valid, and:

> will be enforced unless the party objecting to its enforcement establishes (1) that it is the result of fraud or overreaching, (2) that enforcement would violate a strong public policy of the forum, or (3) that enforcement would in the particular circumstances of the case result in litigation in a jurisdiction so seriously inconvenient as to be unreasonable.

*Coastal Steel Corp. v. Tilghman Wheelabrator Ltd.,* 709 F.2d 190, 202 (3d Cir.), *cert. denied,* 464 U.S. 938, 104 S.Ct. 349, 78 L.Ed.2d 315 (1983).

The forum selection clause appears in the third paragraph of the agreement, on the first page of the agreement. The clause, as noted above, reads in full:

> ACCEPTANCE. INSTALLATION SHALL BE DEEMED TO HAVE OCCURRED WHEN THE EQUIPMENT HAS BEEN DELIVERED TO AND AS-SEMBLED ON LESSEE'S PREMISES, AND HAS BEEN PUT IN CONDITION READY FOR LESSEE'S USE, WHETHER OR NOT LESSEE SHALL HAVE THEN RECEIVED INSTRUCTIONS FOR ITS OPERATION. This Agreement is not consummated nor binding on LESSOR until accepted by an authorized officer of LESSOR. All prepayments specified in the Schedule of Rent Payments and Additional Provisions (in paragraph 1): (a) if installation occurs, will be applied in accordance with the Schedule of Rent Payments and Additional Provisions; (b) if installation fails to occur by reason of LESSEE'S failure or refusal to permit it, will be permanently retained by LESSOR, for liquidated damages. If installation does not occur for any other reason, the advance rentals will be returned to LESSEE within a reasonable period of time less reasonable costs incurred for LESSOR's administration. No officer or employee of LESSOR is authorized to waive, modify or add to any of the provisions hereof except in writing. NO REPRESENTATIONS MADE BY ANYONE OTHER THAN AN AUTHORIZED OFFICER OF LESSOR IN WRITING ARE BINDING ON LESSOR. This agreement shall be considered to be a MASSACHUSETTS contract and shall be interpreted, and the rights and liabilities of the parties hereto determined, in accordance with the law, and in the courts, of the Commonwealth of Massachusetts.

(Complaint, Exhibits A–E).

The plaintiff maintains that the clause should not be enforced because it resulted from "overweening and unfair bargaining power." (P's Br. at 9). The plaintiff further asserts that New Jersey has a "strong policy interest in adjudication of the matter in a local forum because of the consumer protection policies and tax laws implicated." (*Id.*). The plaintiff refers to the lease agreements as "densely worded preprinted provisions" (*Id.*). And, as such, the plaintiff urges this court to invalidate the clause.

Counsel for the plaintiff argued strenuously at oral argument that it was the preprinted nature of the agreements which

renders them unconscionable. However, beginning with *The Bremen, supra,* federal jurisprudence has rejected the traditional scepticism of forum selection clauses for a presumption of validity. *See Coastal Steel Corp. v. Tilghman Wheelabrator Ltd.,* 709 F.2d 190, 202 (3d Cir.), *cert. denied,* 464 U.S. 938, 104 S.Ct. 349, 78 L.Ed.2d 315 (1983); *Jordan v. SEI Corporation,* Civ. No. 96–1616, 1996 WL 296540 (E.D.Pa., slip op., June 4, 1996) at *5. Further, many cases have assessed the validity of forum selection clauses with consumers who had much less sophistication and with much less at stake than the present plaintiff. For example, in *Hodes v. S.N.C. Achille Lauro,* 858 F.2d 905 (3d Cir.1988), *cert. denied,* 490 U.S. 1001, 109 S.Ct. 1633, 104 L.Ed.2d 149 (1989), the court upheld a forum selection clause requiring consumers to assert their claims in Italy, noting that when the plaintiffs contracted for a service to be rendered abroad, they "exposed themselves to foreign law and possibly venue." *Hodes,* 858 F.2d at 913. The court explained that "[w]hile they did not specifically bargain over this [forum selection] clause, they are 'presumed to have received appropriate consideration, in the form of a lower price, for the venue selection clause.'" *Id.* (quoting *Intermountain Sys., Inc. v. Edsall Const. Co.,* 575 F.Supp. 1195, 1197 (D.Colo.1983)). The court recognized the defendants' superior bargaining power, yet noted that superior position would not necessarily invalidate such clauses. Quoting Professor Ellinghaus, the court explained:

> Just because the contract I signed was proffered to me by Almighty Monopoly Incorporated does not mean that I may subsequently argue exemption from any or all obligation: at the very best, some element of deception or substantive unfairness must presumably be shown.

*Id.* Notwithstanding the fact that the plaintiffs had not seen the forum selection clause prior to boarding the cruise ship and that the clause was contained within the thirty-first paragraph of the agreement, the court found that "the [plaintiffs] exercised a reasoned choice in selecting Neapolitan venue, [and] we will not scuttle that choice on the basis of disparate bargaining power." *Id.* at 913–14.

In the instant case, with respect to the forum selection clause, the plaintiff has presented this court with no indicia of deception, fraud or "substantive unfairness". Rather, the plaintiff makes bald assertions of coercion, while conceding that he bargained for the price of the computer equipment. (P's Br. at 5). He attempts to distinguish the purchase of the equipment from the signing of the lease, noting that the bargaining occurred with a third-party vendor. (P's Br. at). However, the defendants' President, Harold M. Gold, provided three affidavits detailing the negotiation process, as well as his company's policies regarding alteration of lease agreements. Mr. Gold represented that "at least once a month" he negotiates terms other than price and payment schedule with prospective lessees. (Third Affidavit of Harold Gold ¶ 5). Significantly, the financing business is highly competitive. Vendors have many choices. Moreover, the nominal plaintiff is not an unwary consumer, but a sophisticated businessman who runs a business grossing over one million dollars per year. Finally, the plaintiff asserts that the actual clause was "hidden." (P's Br. at 13). However, the forum selection clause appears on the *first page* of the lease agreement; the plaintiff signed *five* such agreements over a two week period. Moreover, the plaintiff concedes that he read the clause in each paragraph. Further, the language of the clause is not fraught with the kind of legalese that would be incomprehensible to a person without a legal background. *See Hodes,* 858 F.2d at 910. After five contracts for over thirty thousand dollars of merchandise, the plaintiff can no longer cogently assert that he was an unwary customer. Thus, the contract cannot be considered one of adhesion, tainted by coercion or inequality.

Finally, the plaintiff requests this court to consider the applicability of *Kubis & Perszyk Associates v. Sun Microsystems, Inc.,* 146 N.J. 176, 680 A.2d 618 (1996). There, the New Jersey Supreme Court declined to enforce a forum selection clause located in a franchise agreement which was subject to the New Jersey Franchise Practices Act, N.J.S.A. 56:10–1 to 10–15 (hereinafter "Franchise Act"). After careful consideration, this

court shall not extend the *Kubis* holding to this case. The court in *Kubis* held that in contracts subject to the Franchise Act, forum selection clauses shall be presumptively invalid as contrary to public policy. 680 A.2d at 628. The court reached this conclusion after a thorough review of the history of the Franchise Act, and the New Jersey Legislature's concerns. The legislature's concerns were particularly clear in cases involving the Franchise Act, as the legislature had recently added a provision to the Act as it pertains to motor vehicle franchisors. N.J.S.A. 56:10–7.2. The legislature made specific findings with respect to the bargaining power extant between motor vehicle franchisors and franchisees:

> The Legislature hereby finds and declares the following: a. Notwithstanding the enactment of the "Franchise Practices Act," P.L.1971, c. 356 (C. 56:10–1 et seq.), and other legislation dealing with the franchisor-franchisee relationship, including, but not limited to P.L.1982, c. 156 (C. 56:10–17 et seq.), inequality of bargaining power continues to exist between motor vehicle franchisors and motor vehicle franchisees. This inequality of bargaining power exists even as to motor vehicle franchisees who have had their franchises for many years and who have expended large sums of money in the promotion of their franchises. b. This inequality of bargaining power enables motor vehicle franchisors to compel motor vehicle franchisees to execute franchises and related leases and agreements which contain terms and conditions that would not routinely be agreed to by the motor vehicle franchisees absent the compulsion and duress which arise out of the inequality of bargaining power. These terms and conditions are detrimental to the interests of the motor vehicle franchisees in that they require the motor vehicle franchisees to relinquish their rights which have been established by the "Franchise Practices Act" and supplemental legislation and other statutes and laws of this State. c. As a result, motor vehicle franchisees have been denied the opportunity to have disputes with their motor vehicle franchisors arising out of the franchisor-franchi-

see relationship heard in an appropriate venue, convenient to both parties, by tribunals established by statute for the resolution of these disputes. It is therefore necessary and in the public interest to ensure that motor vehicle franchisees voluntarily determine whether to agree to certain terms and conditions contained in franchises and related leases and agreements presented to them by motor vehicle franchisors and under circumstances unaffected by the compulsion which arises from the inequality of bargaining power.

N.J.S.A. 56:10–7.2. The intent to invalidate forum selection clauses was made even more clear in the Senate Judiciary Committee Statement appended to the statute, which states:

> This bill prohibits certain terms and conditions as part of a motor vehicle franchise. Under the provisions of [this statute] it would be a violation of the "Franchise Practices Act" ... for a motor vehicle franchisor to require a motor vehicle franchisee to agree to any term or condition which would:
>
> . . . . .
>
> (2) specify the jurisdiction, venue or tribunal in which disputes shall or shall not be submitted or otherwise prohibit the franchisee from bringing an action in a forum otherwise available by law[.]

N.J.S.A. 56:10–7.2, Senate, No. 2737–L.1989, c. 24. In this way, the legislature recognized that the original problem which the Franchise Act was meant to remedy continued unabated. The *Kubis* court noted that the problems recognized by the legislature in the Franchise Act amendment were identical to the problems which provided the original impetus for the Act's creation. Thus, when presented with a case which fell clearly within the continuing concerns of the legislature—and with the benefit of a finding by an elected assembly—the court reasonably expanded the new rule regarding motor vehicle *franchises* to *all* franchises.

The plaintiff does not dispute the dissimilarity of a lease agreement and a franchise agreement. Rather, the plaintiff argues that the Consumer Protection Act and the Fran-

chise Act seek to resolve the same problems. The *Kubis* court noted the legislative concerns at the core of the Franchise Act's expansion:

(i) franchisors unwilling to negotiate in good faith about the terms and conditions of the franchise;

(ii) unilateral control exercised by the franchisor over every aspect of the franchisee's business;

(iii) impossibility of obtaining prompt and effective judicial relief, particularly injunctive relief; and

(iv) investment of an individual's entire life savings.

*Kubis,* 680 A.2d at 621–23.

Conversely, issues involving invalidity of contracts under the Consumer Protection Act focus on unconscionability. In the seminal case of *Kugler v. Romain,* 58 N.J. 522, 279 A.2d 640 (1971), the court noted that unconscionability is "an amorphous concept" designed "not to erase the doctrine of freedom of contract, but to make realistic the assumption of the law that the [contractual] agreement has resulted from real bargaining between parties who had freedom of choice and understanding and ability to negotiate in a meaningful fashion." *Id.* at 544, 279 A.2d 640 (cited with approval in *Gladden v. Cadillac Motor Car Division, General Motors Corporation,* 83 N.J. 320, 336–38, 416 A.2d 394 (1980) (Pashman, J., concurring); *see also Telesaver, Inc. v. United States Transmission Systems, Inc.,* 687 F.Supp. 997, 999 (D.Md.1988), *aff'd,* 923 F.2d 849 (4th Cir.), *cert. denied* 502 U.S. 812, 112 S.Ct. 60, 116 L.Ed.2d 36 (1991). The *Gladden* court further noted that "[o]ne party's superior bargaining power is not in itself a sufficient basis for a finding of unconscionability." 83 N.J. at 339, 416 A.2d 394 (Pashman, J., concurring). Generally, New Jersey courts apply the unconscionability doctrine to protect "those most subject to exploitation—the uneducated, the inexperienced and the people of low incomes." *Kugler,* 58 N.J. at 544, 279 A.2d 640. "By contrast, courts are hesitant [to employ the unconscionability doctrine] to relieve strong, knowledgeable and experienced parties from a bargain which they actively negotiated when later events prove the bargain to be less advantageous than one party would prefer." *Gladden,* 83 N.J. at 339, 416 A.2d 394 (Pashman, J., concurring) (quoted in *Telesaver,* 687 F.Supp. at 999) (citations omitted).

Forum selection clauses with consumers have passed the test of general unconscionability since *The Bremen.* Thus, a review of the case law and legislative intent does not compel application of *Kubis* to the present case. Moreover, although the case law does not suggest that the concerns were identical, even if they were, this court would not make a similar expansion of the Consumer Protection Act without the benefit of a comprehensive survey and study of the success of the Consumer Protection Act—the kind of survey which a legislature, not a court, is explicitly designed and expected to undertake.