Robert D. KRUMME, Plaintiff,

v.

WEST POINT–PEPPERELL, INC., Defendant.

Gordon E. ALLEN, John Currier, James J. Dunne, Leo Fornero, Gerard P. Mandry, Norman K. Matheson, Bruce E. Moore, Nicholas Pallotta and Cochran B. Supplee, Plaintiffs,

v.

WESTPOINT–PEPPERELL, INC., D. Michael Roark, C. Powers Dorsett and Barry F. Shea, Defendants.

Nos. 89 Civ. 2016(SAS), 90 Civ. 3841(SAS).

United States District Court, S.D. New York.

Sept. 17, 1998.

Robert J. Hausen, Chadbourne & Parke, LLP, New York City, James W. Harbison, Jr., Morgan, Lewis & Bockius, LLP, New York City, for Plaintiffs.

Francis Carling, Collazo Carling & Mish, LLP, New York City, Frederick A. Brodie, Winthrop, Stimson, Putnam & Roberts, New York City, for Defendants.

### AMENDED MEMORANDUM OPINION

SCHEINDLIN, District Judge.

On May 1, 1998, the United States Court of Appeals for the Second Circuit affirmed this Court's judgment in favor of all defendants in the case of *Allen v. WestPoint-Pepperell, Inc.*, 945 F.2d 40, but vacated this Court's judgment in favor of Robert D. Krumme in the case of *Krumme v. West-Point–Pepperell, Inc.*, 933 F.Supp. 261.[1] In that ruling, the Court of Appeals declined to review this Court's decision that all plaintiffs are entitled to an award of attorneys' fees and costs until those amounts are determined. *See generally Krumme v. WestPoint Stevens, Inc.*, 143 F.3d 71 (2d Cir.1998) ("Opinion").

The case was remanded to this Court "for the calculation of the plaintiffs' attorneys' fees and costs in *Allen* and *Krumme.*" *Id.* at 88. In the Conclusion section of the Opinion, the Court summarized its holding as follows:

> In *Allen*, we affirm the district court's judgment in favor of defendants West-Point, Dorsett and Roark.... In *Krumme*, we affirm the district court's grant of summary judgment to Krumme on the issue of contract formation between Krumme and WestPoint.... With respect to Krumme's breach of contract claim, we conclude that WestPoint is entitled to summary judgment *to the extent* that it argues the 9.3% PBGC-based rate was the proper rate at which to compute the lump sum payments for EPI Amendment participants on April 5, 1989. We vacate the district court's *judgment* on the merits in *Krumme* and remand for further proceedings consistent with this opinion.

*Id.* (emphasis added).

Immediately after the Circuit's Opinion was issued, this Court scheduled a status conference at which the parties raised two issues. Following the conference, the parties submitted a total of seven letters with numerous exhibits. The Circuit's mandate was received in the District Court on July 23, 1998. It is now time to resolve the remaining issues so that this long-lived case might come to an end.

### I. Entry of Judgment

On February 10, 1997, this Court entered an Order and Judgment in favor of Robert D. Krumme. After reciting that the judgment was entered in accordance with the Court's Opinions of November 2, 1995, January 2, 1996, May 13, 1996 and October 18, 1996, that Order stated in three short paragraphs that: (1) Defendant was to pay Krumme a lump sum payment of $241,192.50; (2) that interest on that amount was to be paid from March 31, 1989, at a specified

---

1. Familiarity with the facts of this case will be presumed for the purposes of this opinion as they have been thoroughly discussed by this Court and the Second Circuit during the long course of this litigation. There is no need to recite them here. *See Allen v. WestPoint–Pepperell, Inc.*, 945 F.2d 40, 41–44 (2d Cir.1991); *Allen v. Westpoint–* *Pepperell, Inc.*, 11 F.Supp.2d 277, 278 (S.D.N.Y. 1997); *Allen v. WestPoint–Pepperell, Inc.*, 933 F.Supp. 261, 263–268 (S.D.N.Y.1996); *Allen v. WestPoint–Pepperell, Inc.*, 90 Civ. 3841, 1996 WL 2004, at *1–2 (S.D.N.Y. Jan. 3, 1996); *Allen v. West Point–Pepperell, Inc.*, 908 F.Supp. 1209, 1212–1217 (S.D.N.Y.1995).

interest rate; and (3) that plaintiff was entitled to recover costs and attorneys' fees. The amount of the payment to Krumme was calculated based on this Court's determination that the "discount rate" to be applied to lump sum deferred compensation payments under an employee benefit program (to cause the present value of that payment to be the equivalent of the stream of retirement benefits if paid out in lifetime monthly payments) was 5%. This determination was reversed by the Court of Appeals, which determined that the appropriate discount rate was 9.3%. As a result, the February 10 judgment was vacated.

■ Defendant WestPoint now argues that judgment should be entered in its favor because the Court of Appeals concluded "that WestPoint is entitled to summary judgment *to the extent* that it argues that the 9.3% PBGC-based rate was the proper rate at which to compute the lump sum payment...." 143 F.3d at 88 (emphasis added). WestPoint further claims that Krumme cannot be the prevailing party because it was always willing to make a lump sum payment to him at the 9.3% discount rate, but that Krumme refused to accept that payment. Krumme, on the other hand, argues that he is still the prevailing party because West-Point (1) breached the contract to make the lump sum deferred compensation payments to Krumme when it denied the existence of a contract to do so; and (2) breached the contract when it refused to make the lump sum payments unless Krumme agreed to sign a certain election form and release.

Krumme has the better of the argument. It took eight years of litigation before the Court of Appeals declared that "we affirm the district court's grant of summary judgment to Krumme on the issue of contract formation between Krumme and West-Point...." 143 F.3d at 88. In addition, I

find that WestPoint never agreed to pay Krumme at the 9.3% discount rate unless he signed the election form and the waiver, which he was not contractually bound to do. Thus, once again, judgment must be entered in Krumme's favor. When a final judgment is prepared, following the calculation of attorneys' fees, it should track the language of the February 10, 1997 judgment, but amend the figure in paragraph 1 to reflect the use of the 9.3% discount rate rather than the 5% rate used in the original judgment.

## II. The Effect of the Releases on the Award of Attorneys' Fees

■ After obtaining a final judgment in the district court on all issues other than the amount of the attorneys' fees, and appealing that final judgment to the Court of Appeals, WestPoint now argues that the *Allen* plaintiffs waived their right to an award of attorneys' fees by executing certain releases in order to obtain their lump sum deferred compensation payments.[2] For reasons that are still not clear to this Court, this issue was never raised in this Court until after the appellate court's decision was issued.[3]

WestPoint argues that it did not raise the issue because, at the time of the trial on the attorneys' fees claim, it did not know whether the court would find that the releases were valid. If the court found that the release was invalid, WestPoint contends, then it would not need to reach the issue of whether the plaintiffs waived their claims to attorneys' fees by signing the release. If, on the other hand, the court found that the release was valid, WestPoint presumed that the release must cover any claim for attorneys' fees.

This argument makes no sense for a variety of reasons. The trial of the attorneys' fee issue took place from January 3 through January 9, 1996. That trial concerned two

---

**2.** The release consisted of an election form in which each of the *Allen* plaintiffs elected to accept the lump sum payment based on the 9.3% discount rate and released WestPoint from any further obligation.

**3.** In its Reply Brief to the Second Circuit, West-Point argued that it did, in fact, raise this issue before. WestPoint claims that in its answer and

in its motion to dismiss it asserted that the releases barred the *Allen* plaintiffs' entire claim, which must be construed to include its claim for attorneys' fees. While this general language was included in these documents, WestPoint never pressed the argument at the trial on the issue of whether the plaintiffs were entitled to attorneys' fees.

issues: (1) whether the *Allen* plaintiffs were entitled to additional payments based on the Court's conclusion that the 5% discount rate should control or whether their delivery of releases to defendant prevented any further recovery; and (2) whether all plaintiffs were entitled to attorneys' fees pursuant to the terms of the EPI Amendment.[4] Since it was WestPoint itself that argued that the releases were valid, it should have anticipated prevailing on this issue and should have raised the argument that plaintiffs waived their right to fees by signing these releases. On May 13, 1996, this Court ruled that the releases were valid and further ruled that plaintiffs were entitled to the payment of attorneys' fees pursuant to the terms of the EPI Amendment. Once that Opinion was issued, WestPoint surely knew that the Court believed that the releases were valid.

Nonetheless, WestPoint never moved for reconsideration or for a new trial. In addition, when it chose to appeal the Court's final judgment it represented to the Second Circuit that "[t]he district court's Judgments resolved all issues between the parties except for the dollar figure for attorneys' fees and costs that Krumme and the *Allen* plaintiffs were to recover under the EPI amendment." Brief of Defendant–Appellant–Cross–Appellee WestPoint Stevens Inc. at 32. WestPoint further represented that "[t]he district court has ruled on every aspect of the merits in *Krumme* and *Allen*. The fact that it did not arrive at a specific number for costs and fees does not affect reviewability of the merits." *Id.* at 33.

Because WestPoint had ample opportunity to raise this issue during the trial of the attorneys' fees issue, or even after the trial but prior to the appeal, and because of WestPoint's explicit representation that all substantive issues had been decided by the District Court, it would be highly irregular, and totally inappropriate for the Court to now permit WestPoint to take a second bite at the apple. WestPoint has been in these litigations for nine years. The short answer is that it is too late to now raise a dispositive argument which could have and should have been raised earlier.[5]

### III. *Conclusion*

For the reasons set forth above, when a final judgment is prepared, following the calculation of attorneys' fees, judgment must be entered in favor of plaintiff Krumme. WestPoint is not permitted to now move for summary judgment on the issue of plaintiffs' entitlement to attorneys' fees, an issue which this Court decided more than two years ago. Finally, pursuant to this Court's order of September 3, 1996, the calculation of fees in referred to Chief Magistrate Judge James C. Francis. Because these cases were filed in 1989 and 1990, it would be most helpful if the Magistrate Judge could give immediate attention to these matters.

---

4. The attorneys' fee provision is found in the November, 1988 Amendment to the Executive Permanent Insurance Program ("EPI Program"). As noted in the May 13, 1996 Opinion, this attorneys' fees provision was very broad. *See Allen v. WestPoint,* 933 F.Supp. at 268.

5. WestPoint argued in the Court of Appeals that "application of plaintiffs' unambiguous releases is a pure question of law that requires no additional evidence or factfinding, and thus may be presented to [the Court of Appeals]. *See Jacobson v. Fireman's Fund Ins. Co.,* 111 F.3d 261, 266 (2d Cir.1997)." Reply Brief of Defendant–Appellant–Cross–Appellee WestPoint Stevens Inc. at 10. If WestPoint is right, then this issue can and will be decided as a matter of law and need cause no further expense and delay by permitting a new round of motion practice in the district court.